# JOHN C. STEWART *et al.*

## *v.*

## CINCINNATUS C. MUMFORD.

CHANCERY—*has no jurisdiction to measure damages on claims arising out of contract.* Where the complainant seeks to recover the value of a supposed interest in certain property, upon an alleged contract by the defendants to pay the same to him, his remedy is at law, and not in equity. Equity has no jurisdiction to measure the damages in such cases.

APPEAL from the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Mr. F. C. SMITH, and Messrs. LANPHERE & BROWN, for the appellants.

Mr. F. S. MURPHY, and Messrs. HANNAMAN & WILLOUGHBY, for the appellee.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

The bill in this case seems to have been framed with a view to obtain compensation for the interest complainant had in certain coal mines. Briefly, the facts, as alleged, are, that complainant having obtained a lease of certain lands for the purpose of mining coal, he entered upon the premises, and, in the execution of his undertaking, sunk a shaft, constructed machinery and fixtures suitable for the business, and, in so doing, expended large sums of money. One clause of the lease obligated him to pay his lessor an agreed sum as royalty on the coal taken out, and to keep employed twenty-five men in the work of mining.

After the mines had been put in working order, complainant effected a sale, as he supposed, of all his interests to the "Lathop Coal and Mining Company." The agent of that company, with whom the negotiations in regard to the sale were conducted, objected to that clause in the lease, that bound the lessee to keep employed twenty-five men. An agreement was

effected that the lease held by complainant should be surrendered, and a new one executed by the owners of the lands directly to the "Lathop Coal and Mining Company," which was done on terms satisfactory to the lessors.

Although the coal and mining company had paid complainant a considerable sum as earnest money, it refused to complete the contract and pay the residue of the purchase money. Pending an action brought on that contract against the company, complainant alleges he placed the mines in the possession of the lessor, for whomsoever it should appear, at the end of the litigation, might be entitled to them. Before that suit was tried, the owner of the lands made a lease of the mines to defendants Stewart and McFarland, who at once entered into possession. In the meantime, after the making of the alleged contract with the coal and mining company, but before the making of the lease to Stewart and McFarland, all the machinery and fixtures above ground belonging to the mines were destroyed by fire, and there remained of what complainant had done nothing except what had been done under ground. The mines had then become filled with water, and were of no considerable value.

Whatever may have been the contract between complainant and Dean, his lessor, under which the latter took possession of the mines pending the litigation between complainant and the coal and mining company, it is very clear, from the evidence, that the lease from Dean and wife to Stewart and McFarland was made with his knowledge, without objection, if not with his express consent. According to his own testimony, the lease was made on condition Stewart and McFarland would give him some kind of an obligation to pay him for his interests in the mines, in the event the litigation with the coal and mining company was unsuccessful. He is positive in his statement that Stewart told him they would not rent the property unless he would agree to take a sum certain, should he be defeated in his suit with the coal and mining company. Before the lease was executed, Stewart told him it had been prepared, but not signed. He made no objection, but went

13—80TH ILL.

with him to Dean's house, where it was signed and delivered. Hence, there can be no doubt the lease from Dean and his wife was made with the tacit, if not express, consent of complainant, but with the distinct understanding, on his part at least, that he would be paid for his interests in the mines, by Stewart and McFarland, in case he failed to obtain compensation from the coal and mining company.

The theory of the defense is, that complainant had surrendered his original lease, abandoned the enterprize, and told the lessor to take the mines and do the best he could with them.

Without attempting to adjust the conflicting theories of the parties, it is plain complainant has established the existence of no contract that he is entitled, under the present bill, to have executed in a court of chancery. This bill is not to cancel the lease from Dean and wife, on the ground it had been obtained in fraud of the rights of complainant, but to obtain compensation for his interest in the mines, under his contract with Stewart and McFarland. The cross-errors assigned are, that the court, by its decree, did not allow him the value of the mines, or rather what he had expended on them. Clearly, complainant has sought the wrong forum. Conceding that he made the contract with Stewart and McFarland, as alleged, his remedy is, nevertheless, at law. His claim, whatever it may be, arises out of a contract, and equity has no jurisdiction to measure the damages. Exclusive jurisdiction in that class of cases belongs to the common law courts.

The decree will be reversed and the cause remanded.

*Decree reversed.*